# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MAXINE JOHNSON,

    *Plaintiff*,

v.

KILILO KIJAKAZI,[1]
  Acting Commissioner of Social Security,

    *Defendant*.

No. 19-cv-00002 (DLF)

## MEMORANDUM OPINION

The plaintiff brings this case challenging the Social Security Administration's (SSA) denial of her application for Supplemental Security Income (SSI). Before the Court is Magistrate Judge Faruqui's Report and Recommendation, Dkt. 29, Plaintiff's Objections to the Report and Recommendations, Dkt. 30, and Defendant's Response, Dkt. 31. For the reasons that follow, the Court will adopt Judge Faruqui's thorough Report and Recommendation in part. The Court will remand the remainder of the case to the Commissioner to reconsider Johnson's residual functional capacity (RFC), and to account, in particular, for both her treating physician's opinion and the potential side effects of her prescribed medication.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kililo Kijakazi, the acting director of the Social Security Administration, has been substituted for Andrew Saul as defendant.

I.      BACKGROUND

      A.      **Statutory Framework**

The Social Security Act defines a person as disabled and thus eligible for disability benefits if she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (1982 ed. and Supp. III)).

To evaluate whether a claimant is in fact disabled, the SSA engages in a five-step evaluation process. 20 C.F.R. § 416.920(a)(4). At the first step, the claimant must show that she is not currently working or "doing substantial gainful activity." *Id.* § 416.920(a)(4)(i). At the second step the claimant must demonstrate that he or she has either "a severe medically determinable physical or mental impairment" or "a combination of impairments that is severe" that meets specified duration requirements and "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§ 416.920(a)(4)(ii), 416.920(c). At the third step, the claimant must show that his or her impairment "meets or equals" one of the listed disabilities listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 416.920(a)(4)(iii). If this step is met, the inquiry will end and a finding that the claimant is disabled will be recorded. *Id.* If the third step is not met, the inquiry will proceed to the fourth step in which the ALJ must

assess the claimant's RFC and determine if the claimant, given his or her impairment, is able to perform their past relevant work. *Id.* § 416.920(a)(4)(iv).  If the claimant is found to be able, then the inquiry ends and the claimant will be found not to be disabled.  *Id.*  "Once a claimant has carried the burden on the first four steps, the burden shifts to the Commissioner on step five to demonstrate that the claimant is able to perform other work based on a consideration of her RFC, age, education, and past work experience."  *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004) (cleaned up); *see* 20 C.F.R. § 416.920(a)(4)(v).

      **B.**      **Factual and Procedural History**

On December 31, 2014, the plaintiff, Maxine Johnson, filed an application for supplemental income with the Social Security Administration, alleging that beginning on December 1, 2005, she had become disabled and was unable to work.  A.R. 11, Dkt. 12.  Johnson was employed previously as an oyster shucker from 1997 to 1999 and later as a dishwasher from 2005 to 2006.  Magistrate's R. & R. at 3; A.R. 269.  On October 1, 2015, and again on April 14, 2016, upon reconsideration, the SSA denied her claim.  A.R. 11.

Subsequently, Johnson requested a hearing before an Administrative Law Judge (ALJ) in Washington, D.C., *id.*, and on June 27, 2018, he again denied her application, A.R. 26.  At step one of the disability-evaluation process, the ALJ decided that Johnson clearly met the requirement of not being engaged in gainful employment.  A.R. 13, 109.  At step two, he found Johnson to have the following severe impairments: "partial left index finger amputation, residual effects of partial amputation; left carpal tunnel syndrome; cervical spondylosis/degenerative disc disease with radiculopathy; osteoarthritis; obesity; major depressive disorder/depression; generalized anxiety disorder; posttraumatic stress disorder; alcohol use/abuse disorder; and borderline intellectual functioning."  A.R. 13.

3

At step three, the ALJ concluded that Johnson does not have a qualifying "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." A.R. 14. He noted that Johnson's mental impairments are not the cause of "two 'marked' limitations or one 'extreme' limitation," and thus she did not immediately qualify as disabled under one of the statutory definitions. A.R. 17; R. & R. at 8. In reaching this conclusion, the ALJ relied on Johnson's medical-treatment history and Adult Function Reports (AFR). A.R. 14–17. First, the ALJ noted that Johnson had a relatively conservative psychiatric-treatment history in the relevant period with "no evidence of prolonged inpatient psychiatric hospitalization or frequent emergency room visits due to psychiatric reasons." A.R. 16. Second, he found that Johnson's medical history showed an improvement of mental condition over the relevant period. *Id.* The ALJ cited medical visits from April 6, 2015; May 11, 2015; June 22, 2015; August 24, 2015; November 23, 2015; March 22, 2016; September 3, 2016; and August 8, 2017, which showed intact thought process, controlled anxiety, stable mood, improvement in mental condition, and no problems with attention. *Id.* Finally, the ALJ cited Johnson's February 2015 AFR to show that she was able to engage in numerous activities in and out of the home during the relevant period. A.R. 16–17. These activities included, among others, taking public transportation; going to doctor's appointments, the grocery store, and church; reading; preparing food; paying bills; counting change; and handling a savings account. *Id.* Based on this information, the ALJ concluded that Johnson did not meet any one of the statutorily listed disabilities. A.R. 14–17.

At step four, the ALJ determined that Johnson "has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except no more than frequent climbing of ladders/ropes/scaffolds/ramps/stairs, balancing, stooping, kneeling, crouching, or crawling" and

4

that she is "limited to no more than frequent bilateral handling," "limited to simple, routine and repetitive tasks with no production rate for pace of work," and "limited to no more than occasional interaction with the general public or supervisors." A.R. 17. This step requires a two-part process. A.R. 18; *see Callaway v. Berryhill*, 292 F. Supp. 3d 289, 297 (D.D.C. 2018); 20 C.F.R. § 404.1529. First, the ALJ determines whether there is an underlying medically determinable physical or mental impairment that can reasonably be expected to produce the claimant's pain or other symptoms. A.R. 18; *see Callaway*, 292 F. Supp. 3d at 297; 20 C.F.R. § 404.1529(a)–(b). Second, the ALJ determines the intensity, persistence, and limiting effects of the symptoms. A.R. 18; *see Callaway*, 292 F. Supp. 3d at 297; 20 C.F.R. § 404.1529(c). Together, the two parts show whether the claimant is limited in his or her ability to perform work-related functions. A.R. 18; *see Callaway*, 292 F. Supp. 3d at 297; 20 C.F.R. § 404.1529.

In part one, the ALJ found that Johnson's record supported a finding of "physical and mental limitations due to left carpal tunnel syndrome, spondylosis/degenerative disc disease of the cervical spine with radiculopathy, residual effects of partial left finger amputation, obesity, osteoarthritis, major depressive disorder/depression, anxiety disorder/PTSD, borderline intellectual functioning, and alcohol abuse/use disorder." A.R. 19. Moving to part two, the ALJ found that Johnson was not completely limited in her physical ability to perform work. A.R. 19–20. Specifically, the ALJ noted—relying on medical evaluations from January 2, 2015; April 10, 2015; May 22, 2015; August 7, 2015; December 11, 2015; May 7, 2016; August 5, 2016, December 23, 2016; April 21, 2017; August 25, 2017, and December 8, 2017—that Johnson had a "relatively conservative treatment history as to her physical conditions" and "intact musculoskeletal system with full range of motion," "no body tenderness of the back," and "no gait abnormality." A.R. 19. The ALJ afforded little weight to the August 5, 2016, opinion of Dr.

5

Edwin Williams who noted that Johnson was limited to "lifting and carrying less than five pounds along with being limited to standing/walking for one hour and sitting for one hour of a standard eight-hour workday," and "required an assistive device." A.R. 19–20. The ALJ justified the weight given to Johnson's treating doctor's findings because he found them to be inconsistent with the rest of Johnson's medical record. A.R. 20.

Regarding Johnson's mental limitations, the ALJ found that Johnson's record showed that she was not completely limited in her ability to work. A.R. 21–24. For this finding, the ALJ relied on the same medical evidence referenced in step three which showed that Johnson's anxiety was improving: "her memory was within normal limits, judgment was good, thought process was intact, and no problems were reported with her concentration." A.R. 21. Further, during Johnson's medical visits on May 22, 2015; August 7, 2015; December 11, 2015, April 27, 2017; and December 8, 2017, she was "reported with no depression." *Id.* The same AFRs also showed that Johnson engaged in activities that indicated that she can perform light work. A.R. 22.

At step five, the ALJ considered, given the limitations mentioned in step four, whether jobs exist in the national economy that Johnson would be able to perform. A.R. 24–25; *see Butler*, 353 F.3d at 997; 20 C.F.R. § 416.920(a)(4)(v). The ALJ concluded, relying on an independent vocational expert, that jobs existed that Johnson could hold. A.R. 24–25. In response to the question of "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity," A.R. 24, the expert testified that someone with Johnson's limitations would be able to perform "light exertional jobs as sorter, laundry folder, and assembler, available in numbers ranging from at least 70,000 to 150,000 nationally." A.R. 24–25.

6

On January 2, 2019, Johnson filed her Complaint in this Court for review of her denial of benefits. *See* Dkt. 1. On July 14, 2021, Magistrate Judge Faruqui submitted his report and recommendation to the Court pursuant to Local Civil Rule 72.3. *See generally* R. & R. After considering the parties' submissions and the Administrative Record, Judge Faruqui recommended that the Court affirm the ALJ's finding of no disability. Now before the Court are the plaintiff's objections to that report, Dkt. 30, and the defendant's response, Dkt. 31.

## II.     LEGAL STANDARDS

Local Civil Rule 72.3, which mirrors 28 U.S.C. § 636(b)(1), allows a district judge to refer to a magistrate judge "[p]etitions for judicial review of administrative determinations," among others matters. LCvR 72.3(a)(5). This process allows for either party to file written objections to the magistrate judge's proposed findings and recommendations and requires that the "objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for the objection." LCvR 72.3(b). "A district judge shall make a de novo determination of those portions of a magistrate judge's findings and recommendations to which objection is made as provided in paragraph (b)."[2] LCvR 72.3(c). "[D]istrict judges are not required to review those portions of a magistrate judge's report not objected to." *Childs v. Saul*, No. 18-cv-1006, 2020 WL 2410499, at *3 (D.D.C. May 12, 2020) (citing *Thomas v. Arn*, 474 U.S. 140, 150–51 (1985)). "A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the

---

[2] The government argues that the district court's review of the Magistrate Judge's Report and Recommendation should be for clear error because the "[p]laintiff's objections merely reiterate her original arguments." Def.'s Resp. at 2 (citing *Houlahan v. Brown*, 979 F. Supp. 2d 86, 88 (D.D.C. 2013)). The Court disagrees that the plaintiff has merely restated her original arguments because she has supplemented those arguments with critiques specific to Magistrate Judge Faruqui's Report and Recommendation. There also is no basis in LCvR 72.3(c) for the Court to apply a clear-error standard of review.

magistrate judge, or may recommit the matter to the magistrate judge with instructions." LCvR 72.3(c).

"'In a disability proceeding, the ALJ has the power and the duty to investigate fully all matters in issue, and to develop the comprehensive record required for a fair determination of disability.'" *Butler*, 353 F.3d at 999 (quoting *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989)). "In reviewing an SSA decision, '[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.'" *Jones v. Astrue*, 647 F.3d 350, 355 (D.C. Cir. 2011) (quoting 42 U.S.C. § 405(g)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). "The test requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Butler*, 353 F.3d at 999 (citation omitted).

"The reviewing court must give considerable deference to the Commissioner's decision but remains obligated to ensure that the decision was based on 'substantial evidence.'" *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 14 (D.D.C. 2009) (quoting 42 U.S.C. § 405(g)). The ALJ is "entitled to weigh conflicting opinions and to make his own assessment of their credibility," *Brown v. Bowen*, 794 F.2d 703, 709 (D.C. Cir. 1986); however, the ALJ "cannot merely disregard evidence which does not support his conclusion." *Martin v. Apfel*, 118 F. Supp. 2d 9, 13 (D.D.C. 2000) (citation omitted). The Court "is not permitted to re-weigh the evidence and reach its own determination." *Maynor v. Heckler*, 597 F. Supp. 457, 460 (D.D.C. 1984).

### III. ANALYSIS

Following Judge Faruqui's decision that the ALJ's conclusions were based on substantial evidence and should be accepted in full, R. & R. at 23, Johnson raises three objections. First,

Johnson argues that the ALJ and Judge Faruqui misapplied Paragraph C of step three of the disability finding process by failing to consider the extent to which Johnson relies on "psychosocial supports" in her daily activities. Obj. at 3–7. Second, Johnson argues that the ALJ and Judge Faruqui did not properly apply the requirements for a claimant to establish that she cannot sustain work-related activities. *Id.* at 7–14. Last, Johnson argues that Judge Faruqui misapplied the "treating physician rule" and regulations regarding the self-reporting of symptoms. *Id.* at 14–18.[3] The Court addresses each in turn.

### A. The ALJ Properly Applied the Standard for Determining Anxiety Disability

In step three of the process, the ALJ found that Johnson did "not have an impairment or combination of impairments that [met] or medically equal[led] the severity of one of the listed impairments." A.R. 14. Johnson objects to the ALJ's and Judge Faruqui's applications of Paragraph C to her anxiety disorder. Obj. at 3–7 (discussing A.R. 14–17; R. & R. at 11–15). At this step in the process, the claimant bears the burden of proof. *Butler*, 353 F.3d at 997 (citing 20 C.F.R. §§ 404.1520, 416.920).

Social security regulations define the criteria that Johnson must meet to demonstrate that she suffers from anxiety. *See* 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.06. As set forth in the regulations, a claimant can establish that she meets the criteria of either paragraphs A and B or paragraphs A and C of the regulation. *Id.* Here, the ALJ found that Johnson met the criteria for paragraph A but not for paragraph C. A.R. 14–17. Paragraph C requires that the anxiety be

---

[3] The Court adopts all portions of Judge Faruqui's Report and Recommendation to which Johnson does not object. *See* LCvR 72.3; *Troy v. Colvin*, 266 F. Supp. 3d 288, 293 (D.D.C. 2017) ("A district judge is not required, however, to review those potions of a magistrate judge's report to which no objection is made."). In particular, the Court adopts Judge Faruqui's findings relating to step one and two of the disability determination process. *See* Obj. at 2. With regard to step three, the Court accepts all of Judge Faruqui's findings except the ALJ's finding that Johnson does not meet or exceed the definition of "anxiety." *See id.* at 3–7; LCvR 72.3(c).

9

"serious and persistent," meaning that the claimant has a documented history of the disorder over two years and:

> evidence of *both*: (1) Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the claimant's] mental disorder and (see 12.00G2b), (2) Marginal adjustment, that is, [the claimant] ha[s] minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.06 (emphasis added).

Johnson failed to meet the marginal-adjustment requirements of C(2).[4] "'[M]arginal adjustment' means that [the claimant's] adaption to the requirements of daily life [was] fragile." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(G)(2)(c). A claimant "achieve[s] only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of [her] symptoms and signs and to deterioration in [her] functioning." *Id*.

Although the ALJ did not address certain inconsistencies in the record relating to Johnson's need for psychosocial supports, *see* Obj. at 5–7 (discussing A.R. 122–24, 294–97, 322–24); A.R. 16–17 (not mentioning claimant's evidence that she needed help for basic daily activities), his finding that Johnson had more than "minimal capacity to adapt to changes," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(G)(2)(c), is well supported by the record. As both the ALJ and Judge Faruqui noted, "Johnson engaged in a wide range of social activities outside of her home almost on a daily basis, such as attending church, using public transportation, walking to the bus stop, and shopping for groceries and clothing, among other things." R. & R. at 14 (cleaned up) (citation omitted); *see* A.R. 17. The ALJ cited the November 2015 AFR, in

---

[4] Because the "plaintiff must meet the requirements set forth in C(1) *and* C(2)," *Johnson v. Saul*, No. 19-cv-3829, 2021 WL 411202, at *3 (D.D.C. Feb. 5, 2021), the Court need not address Johnson's arguments that the ALJ and Judge Faruqui failed to consider the extent of her psychosocial supports in consideration of her anxiety, *see* Obj. at 5–7.

which Johnson admitted that she can independently "pay bills, count change, handle a savings account, and utilize a checkbook/money order."  A.R. 17, 324.  Regarding adaptation specifically, the ALJ found Johnson's "psychiatric treatment history" to be "relatively conservative," and noted that "the claimant reported and/or was reported as experiencing improvement with medication" and pointed to two such reports—one on April 6, 2015 when "[Johnson] reported that medication was helping her with anxiety," and another on August 24, 2015 when "[Johnson] reported that she was 'doing much better.'"  A.R. 16.

Despite the range of activities documented in the November 2015 AFR, Johnson cites the same AFR to support her claim that she "cannot do anything without support."  Obj. at 5.  Yet Johnson acknowledged in the AFR that she prepares her own meals and walks and uses transportation on her own.  *See id.*; A.R. 323–24.  She also failed to rebut the evidence of adjustment cited by the ALJ, which is more than "marginal."  *See Johnson*, 2021 WL 411202, at *3 (upholding ALJ's finding that the claimant had achieved more than a marginal adjustment because the claimant was "able to use public transportation and shop in stores, which would require him to adjust to potentially stressful situations such as crowds" (citation omitted)).  Accordingly, the Court finds that there is substantial evidence to support the ALJ's decision that Johnson did not carry her burden of establishing the marginal adjustment criteria of Paragraph C.

### B. The ALJ Adequately Considered the Evidence of Pain and the Third-Party Function Report

In the fourth step of the disability-determination process, the ALJ assessed Johnson's RFC, *see* A.R. 17–24, and concluded that she had the "capacity to perform light work" with some physical limitations, some exposure limitations, and some occupational limitations, A.R. 17.

11

Johnson disagrees with the ALJ's and Judge Faruqui's conclusions and argues that they erred in applying part two of this step—the determination of the intensity, persistence, and limiting effects of her disabilities.  Obj. at 8.  In particular, Johnson asserts that the ALJ and Judge Faruqui did not adequately connect their determinations of her inability to perform work-related activities to the facts of the record.  *Id.*  She further claims that they ignored evidence of her degree of pain and disregarded the third-party function report filed by Johnson's friend.[5]  *Id.*

In assessing the claimant's RFC, the ALJ must assess the whole record which includes "all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3); *see Callaway*, 292 F. Supp. 3d at 297 (explaining that the ALJ must "evaluate the claimant's statements as well as 'all [of] the available evidence,' including the 'claimant's medical history, medical signs and laboratory findings; objective medical evidence of pain; the medical opinions of the claimant's treating physician[s]; and any other evidence that bears on the severity of the pain'" (quoting *Butler*, 353 F.3d at 1004)).  The ALJ "will consider any statements about what [the claimant] can still do that have been provided by medical sources, whether or not they are based on formal medical examinations."  20 C.F.R. § 404.1545(a)(3).  The ALJ's determination "must contain a 'narrative discussion' identifying the evidence that supports each conclusion."  *Butler*, 353 F.3d at 1000.  In doing so, the ALJ must "build an accurate and logical bridge from the evidence to [the] conclusion so that . . . a reviewing court . . . may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review."  *Lane–Rauth v. Barnhart*, 437 F. Supp 2d 63, 67 (D.D.C. 2006) (internal quotations omitted).  However, courts in this district have found that ALJs need not assess every piece of evidence specifically.  *See, e.g.*,

---

[5] Johnson also claims that the ALJ and Judge Faruqui did not adequately consider the side effects of her medication, specifically her dizziness.  *See* Obj. at 11–13.  The Court will address this objection when it considers the treating-physician rule.  *See infra* section III.C.

12

*Goodman v. Colvin*, 233 F. Supp. 3d 88, 109 (D.D.C. 2017) (explaining that "there is 'no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision'" (quoting *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014)); *Charles v. Astrue*, 854 F. Supp. 2d 22, 30 (D.D.C. 2012) (citing 42 U.S.C. § 405(g)); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision.").

### 1. *Evidence of pain*

Regarding Johnson's level of pain, the ALJ considered all of the evidence in the record before concluding that she was able to perform light work. He cited Johnson's "relatively conservative treatment history as to her physical conditions," "intact musculoskeletal system with full range of motion," lack of "body tenderness of the back," and lack of "gait abnormality" as substantial evidence that her pain was not sufficient to limit her ability to work. A.R. 19. In short, the ALJ properly considered and discussed all of the medical findings on the record, specified the weight afforded to each, and explained the reasoning for the weight given. *See* A.R. 19–20.

Johnson disagrees. Obj. at 9. But she fails to point to any evidence that the ALJ should have considered. *See id*. Instead, she argues that the evidence supported a finding in her favor. *See id*.

It is not the role of the reviewing court, however, to reweigh the evidence the ALJ considered. *E.g.*, *Davis v. Berryhill*, 272 F. Supp. 3d 154, 167 (D.D.C. 2017) (citing *Crosson v. Shalala*, 907 F .Supp. 1, 2 (D.D.C. 1995)); *Guthrie v. Astrue*, 604 F. Supp. 2d 104, 112 (D.D.C. 2009) (citing *Ware v. Barnhart*, 357 F. Supp. 2d 134, 138 (D.D.C. 2004)). And, as Judge Faruqui discussed, the ALJ explained why he gave little weight to Dr. Williams, Johnson's

13

treating physician. The doctor merely checked a box "without providing any additional explanation," R. & R. at 16 (quoting *Page v. Colvin*, No. 15-cv-00833, 2016 WL 9456343, at *15 (D.D.C. Jan. 28, 2016)), and his "findings were 'inconsistent with the full longitudinal record,'" R. & R. at 16 (quoting A.R. 20). Given the great weight afforded to an ALJ's assessment of the credibility of conflicting opinions and the fact that the ALJ considered all of the record evidence, the Court agrees with Judge Faruqui's finding that the ALJ's finding regarding the extent of Johnson's limitation is supported by substantial evidence. *See, e.g.*, *Grant v. Astrue*, 857 F. Supp. 2d 146, 153–55 (concluding that the ALJ gave appropriate consideration to treating physician's opinion despite rejecting it); *Goodman*, 233 F. Supp. 3d at 107–09 (deferring to ALJ's rejection of plaintiff's claims of pain in light of ALJ's explanation that the claimed severity was inconsistent with the whole record).

2. *Consideration of third-party function report*

The record also reveals that the ALJ gave appropriate consideration to Eddie Curtis's third-party function report. As the SSA has advised, when "considering evidence from 'non-medical sources' who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors" (or Curtis, Johnson's romantic partner, A.R. 302) "it [is] appropriate," as the ALJ did here, "to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence," Social Security Ruling, SSR 06-03P, 2006 WL 2329939, at *6. To "establish the existence of a medically determinable impairment . . . there must be evidence from an 'acceptable medical source' for this purpose." *Id.* at *2.

14

Johnson disagrees that the ALJ and Judge Faruqui gave adequate weight to Curtis's third-party function report. Obj. at 10–11. In her view, the report shows that "her symptoms are debilitating and would prevent her from working an eight-hour workday." Obj. at 10. She also contends that "Mr. Curtis' testimony is consistent with the record that Ms. Johnson is limited in her daily functioning and requires extensive supports." *Id.*

The Court agrees with Judge Faruqui that the ALJ did not improperly discount Curtis's report. As Judge Faruqui noted, Curtis may be a biased party because he and Johnson were in a two-year romantic relationship. R. & R. at 17; *see* SSR 06-03P, 2006 WL 2329939, at *6. Moreover, although Curtis alleged that Johnson has issues lifting over ten pounds and has walking limitations, A.R. 307–08, he also acknowledged that Johnson can perform a number of activities, including "feed[ing] herself and prepar[ing] her own food" daily, A.R. 304, going on walks and using public transportation, A.R. 305, watching TV, walking to stores, going to church, and visiting family weekly, A.R. 306. And Curtis's conclusion that Johnson is limited in her daily functioning and requires extensive supports is entitled to little weight because, as Judge Faruqui and the ALJ explained, it is inconsistent with the record as a whole. R. & R. at 18 ("Plaintiff's conservative treatment history, benign findings in her physical examinations, and Plaintiff's repeated statements about her improved symptoms, further justified the ALJ's discounting of Mr. Curtis' testimony."); *see* A.R. 23–24 (deciding that Curtis's "conclusions [we]re inconsistent with the claimant's conservative treatment history . . . , examinations . . . , and reports of improvement," A.R. 24). This Court agrees.

15

### C.     The ALJ Did Not Adequately Consider (or Explain Why He Did Not Credit) the Findings of Johnson's Treating Physician

Finally, Johnson claims that the ALJ violated the treating-physician rule by failing to give greater weight to the findings of her treating physician, Dr. Williams.  Obj. at 15.  Specifically, Johnson challenges the ALJ's decision to disregard Dr. Williams's check-box prescription of a walking cane and his diagnosis of her dizziness.  Obj. at 16.  Without expressing a view on whether the ALJ's decision was correct, the Court remands the case to the ALJ to reconsider Johnson's RFC because the ALJ did not consider (or at least adequately explain why he rejected) her treating physician's opinion in light of (1) conflicting evidence in the record unaddressed by the ALJ and (2) the potential side effects of her medication.

Under federal regulations, ALJs must "give more weight to the medical opinions from [the claimant's] treating sources" and "give good reasons in [their] notice of determination or decision for the weight [they] give [the claimant's] treating source's medical opinion." 20 C.F.R. § 416.927(c)(2).  This is "[b]ecause a claimant's treating physicians have great familiarity with [the claimant's] condition," *Jones*, 647 F.3d at 355 (quoting *Butler*, 353 F.3d at 1003), such that they can "provide a detailed, longitudinal picture of [the claimant's medical impairment(s)," 20 C.F.R. § 416.927(c)(2).  "A treating physician's report is 'binding on the fact-finder unless contradicted by substantial evidence.'"  *Butler*, 353 F.3d at 1003 (quoting *Williams v. Shalala*, 997 F.2d 1494, 1498 (D.C. Cir. 1993)).  "[A]n ALJ 'who rejects the opinion of a treating physician'" must "'explain his reasons for doing so.'"  *Id.* (quoting *Williams*, 997 F.2d at 1498).  This includes "acknowledg[ing] the contradictory evidence in the record," *id.*; noting "'which record supplie[d] the reason' for rejecting the treating physician's opinion," *id.* (alteration in original) (quoting *Williams*, 997 F.2d at 1499); and "explaining what weight he

16

attaches to [the treating physician's] conclusions, or if he attaches none, his reason therefor,'" *id.* (alteration in original) (quoting *Simms*, 877 F.2d at 1053).

Furthermore, the ALJ is required to "make a particularized finding on the effect of [the claimant's] combination of impairments and, if necessary, the medication that the claimant must take." *Martin*, 118 F. Supp. 2d at 15–16 (citation omitted) (finding that the ALJ erred by failing to consider the effects of claimant's medication in conjunction with other symptoms); *see also Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (remanding to ALJ for failure to consider the combined effects of the claimant's impairments, including "the negative impact of her medication" even though no impairment on its own was sufficient to find that claimant was disabled). When considering the side effects of medication, the ALJ must make clear "which side effects he considered, to what extent he considered them, or how he considered them." *Lomax v. Comm'r of Soc. Sec.*, No. 20-cv-55, 2021 WL 3508087, at *6 (D.D.C. Aug. 4, 2021) (citing *Flores v. Massanari*, 19 F. App'x 393, 399–400 (7th Cir. 2001)).

In discounting the opinion of Dr. Williams, the ALJ noted that Dr. Williams was the only medical professional who indicated that Johnson needed a cane to ambulate. A.R. 19, 20, 541. Without further explanation, the ALJ found that Dr. Williams's medical diagnoses was "inconsistent with the full longitudinal record." A.R. 20.

On review, Magistrate Judge Faruqui concluded that the ALJ properly weighed the treating physician's opinion. In Judge Faruqui's view, Dr. Williams's "prescription 'lack[ed] the specificity necessary to determine whether this was the doctor's medical opinion or merely a restatement of what was told to him by'" the plaintiff. R. & R. at 20–21 (alteration in original) (quoting *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012)). In addition, Judge Faruqui pointed to evidence in the record that supported the conclusion that the use of a cane was not

17

medically necessary. *See* R. & R. at 21 (citing A.R. 537–39, 589, 773–77) (discussing opinion of Dr. Nolte and examinations between January 2015 and December 2017 which did not show need for a cane). Judge Faruqui also found that the ALJ's decision to reject the plaintiff's statements was supported by substantial medical evidence. *See* R. & R. at 22 (citing A.R. 357–63, 395, 403, 543–65, 763–810, 799, 930–41). Of particular note, the ALJ said that Johnson denied dizziness in medical visits from 2014 to 2017. *See* R. & R. at 22 (citing A.R. 357–63, 543–65, 763–810, 930–41).

Judge Faruqui's explanation for the ALJ's determination on this issue may well be correct. Nonetheless, the Court will remand this case for reconsideration because the ALJ—and not a reviewing court—must explain his reasons for rejecting the treating physician's opinion and resolving "contradictory evidence" in a certain way. *Butler*, 353 F.3d at 1003. Judge Faruqui's Report and Recommendation identified solid evidence on which the ALJ may have relied, but there are inconsistencies in that evidence, and the ALJ's conclusory statement dismissing Dr. Williams's medical diagnosis does not explain how the ALJ considered and weighed those discrepancies. Key among them is the lack of any clear explanation of Johnson's alleged dizziness, which is the kind of ailment that could require a walking cane or other ambulatory-assistance device.

Johnson's alleged dizziness is key to the ALJ's determination because dizziness is a noted side effect of Johnson's prescribed medications. As such, the ALJ's failure to consider fully (or at least explain) the relevant side effects of Johnson's medications, *see, e.g.*, *Lomax*, 2021 WL 3508087, at *6; *Martin*, 118 F. Supp. 2d at 18–19, in light of the opinion of her treating physician, *see Jones*, 647 F.3d at 355, requires remand. The ALJ only mentioned Johnson's alleged medication side effects once, and he failed to address whether her prescribed

18

medication affected her dizziness. *See* A.R. 18. His failure to do so is particularly problematic because of the conflicting evidence in the record. The record includes diagnoses of dizziness. *See* A.R. 386 (June 30, 2014, diagnosis of dizziness and giddiness/vertigo by Dr. Marshall); A.R. 934 (August 25, 2017, diagnosis of dizziness and giddiness by Dr. Gerald). It also includes reports of Johnson denying that she experienced dizziness. *See, e.g.*, A.R. 361, 363, 544, 548, 550, 553, 556, 559, 565, 763. A single doctor's report says both that Johnson "state[d] headaches are still present along with dizziness and weakness," A.R. 357, and "denie[d] . . . dizziness," A.R. 358.[6]

On review, this Court is not in a position to resolve these factual inconsistencies. The ALJ must weigh the evidence and either reconsider or provide a sufficient explanation for his decision to reject Johnson's treating physician's diagnosis regarding her dizziness and her need for a walking cane. He must also consider and explain whether Johnson's dizziness was a side effect of her prescribed medications that would necessitate use of an ambulatory device. Without more, the Court cannot be certain that the ALJ's failure to explain his reasons was

---

[6] Judge Faruqui noted, and this Court agrees, that Johnson denied having side effects from her medications. R. & R. at 18 (citing A.R. 504–20, 621–44). Even so, Johnson did complain of dizziness on at least one occasion, *see, e.g.*, A.R. 357, and simply because she, a patient lacking formal medical training, did not identify her dizziness as a "side effect" of her medication is not fatal to her claim.

Judge Faruqui also noted that Dr. Singh recorded improvements in Johnson's mental state after she took the medication. R. & R. at 18 (citing A.R. 512). While that is true, the Court cannot be sure that those improvements eliminated the dizziness Johnson experienced. As the *Lomax* Court explained, "the ALJ's consideration of positive side effects of the medication is not a substitute for side effects analysis" because "[t]he regulations explicitly distinguish between the 'effectiveness' and 'side effects' of medication." 2021 WL 3508087, at *7 (quoting 20 C.F.R. § 404.1529(c)(3)(iv)).

Without further explanation by the ALJ, the Court cannot draw any definite conclusion about these issues.

19

harmless. Because a vocational expert testified that there are *no jobs* currently in the national economy for a person with Johnson's limitations who also requires a cane to ambulate, *see* A.R. 136, resolution of these issues will be dispositive of whether she has a meritorious disability claim. In such circumstances, remand is appropriate.[7]

## CONCLUSION

For the foregoing reasons, the Court remands the case to the Commissioner to reconsider Johnson's RFC, and to account, in particular, for both her treating physician's opinion and the potential side effects of her medication. In all other respects, Judge Faruqui's Report and Recommendation is adopted. A separate order consistent with this decision accompanies this memorandum opinion.

January 25, 2022

DABNEY L. FRIEDRICH
United States District Judge

---

[7] To be clear, the Court expresses no opinion as to the appropriate outcome on remand.